SHELDON, Respondent, vs. BLACKMAN, Administrator, and others, Appellants.

*September 24—October 20, 1925.*

*Bills and notes: Consideration: Past and future services: Value: Adequacy: Parol evidence: To show different consideration: Possession of note by payee: Presumption of delivery: Note payable at death: Validity: Testamentary character: Extrinsic evidence: Recitals concerning consideration as evidence.*

1. Mere recitals in notes or other instruments as to the consideration are not always conclusive, sec. 116.33, Stats., merely codifying the law as it previously existed. p. 10.
2. Where there is no element of fraud or misrepresentation, the value of services rendered may be measured by the wants of the persons benefited; and when the value of services is indefinite or indeterminate, or largely a matter of opinion, the courts will not substitute their judgments for that of the contracting parties. In such case mere inadequacy does not amount to a failure or partial failure of consideration. p. 11.
3. In a contest on a claim against an estate on a note for services rendered decedent, parol evidence is inadmissible to show that the consideration for the note was different from that agreed on, where the value of the services rendered and for which the note was given was largely a matter of opinion and no element of fraud or misrepresentation as to their value existed. p. 12.

4. Generally, if a payee of a note has it in his possession, that is *prima facie* evidence of delivery.   p. 12.
5. Sec. 116.20, Stats., providing that where an instrument is no longer in the possession of a party whose signature appears thereon a valid and intentional delivery by him is presumed, states the common-law rule; and the presumption of delivery arising from possession applies also to non-negotiable paper, but it is disputable and easily rebutted.   p. 12.
6. The evidence in this case is *held* to support a finding that the note was duly delivered to the payee.   p. 13.
7. A note by which the decedent promised to pay the payee, at the date of his death, a certain sum for services rendered to him and his wife, is *held* not shown to be testamentary in character because it was executed contemporaneously with a will nor because the decedent retained possession of the note until his death.   p. 13.
8. Nor was the note void in that it was impossible of payment by the maker and that the time of payment was indefinite, since all uncertainty ceased on the happening of decedent's death, which was sure to occur.   p. 15.
9. So, also, the note is *held* to manifest a purpose to make an absolute and unconditional contract for the payment of a certain sum on account of what was deemed a present indebtedness, notwithstanding a subsequent clause therein providing that payment for future services should not cause the abatement of any general legacies provided for by the will.   p. 15.
10. In construing the note the court is bound to consider all its parts; and the form of the document is not controlling on the question of whether it is testamentary in character.   p. 15.
11. Extrinsic evidence may be received to determine whether an instrument was intended to be testamentary in character; and the fact that a note was not to take effect until the death of the maker does not make it testamentary.   p. 16.

APPEAL from a judgment of the county court of Walworth county: ROSCOE R. LUCE, Judge.   *Affirmed.*

This is an appeal from the judgment of the county court of Walworth county in probate, rendered in favor of the respondent for a claim against the estate of Henry J. Wilkinson, deceased.   The claim the allowance of which is the subject of this appeal is based upon a written promise of the deceased to compensate the respondent in the sum of $30,000 for services rendered and to pay reasonable value

for services rendered him subsequently to the date of the written instrument.  The instrument in question reads as follows:

"$30,000.    Whitewater, Wisconsin, May tenth, 1919.

"At the date of my death, for value received, I promise to pay to *Julia H. Sheldon,* of Whitewater, Wisconsin, the sum of thirty thousand ($30,000) dollars, without interest.

"The consideration for this note is the services rendered by the said *Julia H. Sheldon* for me, at my request, in the care of my home and the care of myself and wife during the thirty years next preceding the date hereof, for which services so rendered to date I am indebted to her in the above amount, no part of which has been paid.

"And it is hereby understood and agreed that for future services rendered by her she shall be paid their reasonable value from my estate, at the time of my decease, the amount to be paid for future services, however, not to cause the abatement of any general legacies provided for by my last will and testament now made or that hereafter may be made.

"($6 Rev. Stamps.)       H. J. WILKINSON.  (Seal)"

The respondent, a niece of the wife of the deceased, came to live with Mr. Wilkinson and his wife in 1889, at the request of Mr. Wilkinson and upon the understanding that she would receive his property upon the death of himself and his wife if she cared for them until the death of both of them.   The respondent performed the services required for thirty-four years, giving up a dressmaking establishment which she was operating in Woodstock, Illinois, at the time the request for her services was made.   In May, 1919, the written instrument set out above and a will were made, the latter, after providing for certain small legacies, leaving the residue of the property of the deceased to the respondent.   The will has been lost or destroyed, and upon filing a claim against the estate of the deceased, based upon the written instrument, it was opposed by the next of kin and the administrator upon the grounds that it was not properly delivered, that there was not sufficient considera-

tion for it, and that it was testamentary in character, but not properly attested to take effect as a will.

Mr. Wilkinson was a banker, and, so far as appears from the record, of good business ability. The nearest other relatives were cousins. Mrs. Wilkinson was quite deaf and dim of vision. Her health for many years was poor and she required much personal physical care before she died. The claimant always assisted her to dress, and when she went upon the street attended her. Mr. Wilkinson had serious bladder trouble and was cared for by the claimant acting as a trained nurse, who catheterized him for about ten years. In other respects she performed delicate and disagreeable services for him. The claimant lived in and was treated as a member of the family, but performed all kinds of domestic service. During the period she bought a house for which she paid $1,500, but title was taken in the name of the deceased. When she commenced rendering service she was forty-two years old. Mrs. Wilkinson died at the age of eighty-four and Mr. Wilkinson died at the age of ninety-four.

When the writing in question and the last will of the deceased were executed they were prepared by the attorney of Mr. Wilkinson at his home, and although the claimant was in the house she was not present when the note was signed and did not know the contents of the will, but saw it in a box thereafter and had access to the box and its contents. The first time she saw the note or knew of its existence was August 5, 1920, about fifteen months after its execution, when Mr. Wilkinson had it in his hand. She took the note to Mr. Ferris, attorney for the deceased, for safe-keeping on August 6, 1920, and took a receipt. Mr. Ferris held the note thereafter and produced it at the trial.

On the 28th of June, 1917, both Mr. and Mrs. Wilkinson executed wills in which each devised all of his or her estate to the other in case of survival, but in the event that the other did not survive, certain small legacies were given to

various people, and all the rest and residue was bequeathed
to the claimant and she was named executrix without bond.

It is admitted that the respondent has a claim for services
upon a *quantum meruit* basis.  The probate court found
that the instrument in question was a non-negotiable prom-
issory note for good and sufficient consideration, and al-
lowed the sum of $30,000 and the reasonable value of the
services of the respondent from the date of the instrument
until the date of the death of the deceased at $30 a week,
in all $35,925 with interest.  From this judgment this appeal
is brought.

For the appellants there was a brief by *E. T. Cass* of
Whitewater and *C. J. Sumner* of Delavan, attorneys, and
*E. L. von Suessmilch* of Delavan and *Simmons, Walker &
Wratten* of Racine, of counsel, and oral argument by *Mr.
Cass* and *Mr. Sumner.*

For the respondent there was a brief by *Jeffris, Mouat,
Oestreich, Avery & Wood* of Janesville, and oral argument
by *Otto A. Oestreich.*

JONES, J.  It is the first broad contention of the appel-
lants' counsel that there was no consideration for the writing
in question; that since it appeared that Mr. Wilkinson's
property included real estate when the original parol agree-
ment was made, it was void under the statute of frauds.
It is further argued that the relations between the parties
were such that no compensation could be recovered without
an express contract; that under the arrangement then made
the deceased would owe the claimant nothing at any par-
ticular time, as she could recover only on complete perform-
ance.  As bearing on these propositions counsel cite the
following cases: *Ellis v. Cary,* 74 Wis. 176, 42 N. W. 252;
*Leitgabel v. Belt,* 108 Wis. 107, 83 N. W. 1111; *Martin v.
Estate of Martin,* 108 Wis. 284, 84 N. W. 439; *Rodman
v. Rodman,* 112 Wis. 378, 88 N. W. 218; *Estate of Leu,*
172 Wis. 530, 179 N. W. 796.  It is conceded, however,

that under these decisions although a parol agreement of
this nature is void, it may be resorted to to rebut the pre-
sumption that the services rendered were gratuitous, and
it is claimed that the cause of action accrues only after the
services have been rendered, and unless there is an open
mutual account or partial payments the claim for services
for more than six years is barred by the statute of limita-
tions.  It is argued that at best the deceased owed the claim-
ant merely the reasonable value of her services for the six
years next preceding the execution of the written instrument.
The complaint was in two counts.  One claimed compensa-
tion for the reasonable value of the services during the
thirty-four years, and the other was based upon the written
instrument.  The defendant's counsel offered proof of the
reasonable value of the services, which was ruled out on
objection, and the question is thus raised whether this ruling
was correct.

Mr. and Mrs. Wilkinson, when sixty and fifty-four years
of age respectively, seemed to realize, since they had no
children or near relatives, that they might need, as old age
approached, faithful and competent care, and they were will-
ing that the bulk of their property should be devoted to that
object.  They selected the claimant as the person best fitted
to comply with their wishes, and Mr. Wilkinson made with
her the arrangement that if she should faithfully serve them
during their lives she should have the residue of their es-
tate.  Although this parol agreement was invalid it showed
the intention that she should be paid, and well paid.  This
intention was again manifested by the two wills executed
in 1917.  The failing health they had anticipated came in
due time.  Their later years were clouded by such physical
ailments as called for the most devoted service, and they
were not favored with an "old age serene and bright."

No question is raised that the claimant did not perform
in full measure the arduous task she had assumed.  In 1919,
after the aged couple had enjoyed and had the benefit of

this service for thirty years, Mr. Wilkinson, after advice as to its legal effect, made the note in question. If the last will had been proven, the claimant would have received more than the sum stipulated in the note, since probably no valid objection could have been made to it. And yet Mr. Wilkinson may have shared the fear and dread of many laymen lest a will may be contested. With all this background he deliberately executed the note now relied on by the claimant. Counsel for the appellants cite several cases from this court in which it was held that under some circumstances the consideration of a promissory note may be inquired into as between the original parties and where recovery was allowed for less than the stated amount. *Thomas v. Thomas,* 7 Wis. 476; *Griffiths v. Parry,* 16 Wis. 218. These were cases where there was clear mistake as to the proper amount. Other authorities might be cited showing that mere recitals in notes or other instruments as to the consideration are not always conclusive, and under the Negotiable Instruments Law it is now declared that—

"Absence or failure of consideration is matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense *pro tanto,* whether the failure is an ascertained and liquidated amount or otherwise." Sec. 116.33, Stats. 1923.

This statute was not cited nor discussed in either of the briefs or the oral argument, but we do not consider that the statute in this respect more than codifies the law as it previously existed.

In this case the services had been rendered under such conditions and were of so intimate and delicate a character that their value could be estimated with no degree of mathematical certainty. No one knew their value so well as Mr. and Mrs. Wilkinson, and if he had not appreciated their value he would have been guilty of gross ingratitude. Evidently he did realize their worth and desired to make liberal compensation, which he had the perfect right to do. If

he deliberately chose to pay more than the services were really worth, he had the right to do so. To receive the consideration and respect of others and to be able to be generous in later life are among the motives which prompt men to practice economy and self-denial. There had been a consideration of inestimable value for the execution of the note, and it was in no sense a gift. The utmost that can be fairly claimed is that the consideration for the note was inadequate. But under such facts as here exist, mere inadequacy does not amount to a failure or partial failure of consideration. Of course that may be a circumstance relevant to the issue where fraud or duress or undue influence is claimed, but in this case there is no suggestion of such a claim. There might be circumstances under which the inadequacy of consideration might be so grossly disproportionate to the value of the benefit received or the services rendered that a court might feel justified in refusing to enforce the contract. In this case, where there was no element of fraud or misrepresentation, the value of the services may be measured by the wants of the persons benefited. To hold that this agreement, deliberately made, should be set aside or impaired would be a denial of the right of parties to make their own contracts. There is abundant authority for the rule that when the value of services is indefinite or indeterminate or largely a matter of opinion, the courts will not substitute their judgments for that of the contracting parties. *Rust v. Fitzhugh*, 132 Wis. 549, 112 N. W. 508; *Holz v. Hanson*, 115 Wis. 236, 91 N. W. 663; *Earl v. Peck*, 64 N. Y. 596; *Cowee v. Cornell*, 75 N. Y. 91; *Wolford v. Powers*, 85 Ind. 294 (see interesting collection of cases) ; *Price v. Jones*, 105 Ind. 543, 5 N. E. 683; *Miller v. Finley*, 26 Mich. 249; 3 Ruling Case Law, 932. If the note was delivered to and accepted by the claimant (and as later appears, we hold that it was), she could not be heard to claim that more than the amount specified was due her, and we consider that the represent-

atives of the deceased have no better right to question the adequacy of the consideration. It is our conclusion that parol evidence was inadmissible to show that the consideration was different from that agreed upon.

It is contended by the respondent's counsel that the statement in the contract as to consideration was not a mere recital subject to explanation by parol, but in view of the facts proven was contractual in its nature and therefore not open to explanation or denial; but it is unnecessary to decide this question.

It is conceded by counsel for the respondent that the delivery of the writing was necessary to its binding effect, and counsel for appellants do not question the general rule that if a payee of a note has it in his possession that is *prima facie* evidence of delivery. As to negotiable paper the rule is thus stated in the statutes in sec. 116.20: "And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved." This, however, was the rule at common law, and the presumption of delivery arising from possession applies to non-negotiable paper as well. 3 Ruling Case Law, 859; *Johnson County Sav. Bank v. Scroggin D. Co.* 152 N. C. 142, 67 S. E. 253, 50 L. R. A. N. s. 581; *Hickok v. Labussier*, 1 Morris (Iowa) 115; *Fisher M. W. Co. v. Leavenworth Nat. Bank,* 77 Kan. 268, 94 Pac. 124; *Trost v. Hinman,* 68 Hun, 94, 22 N. Y. Supp. 612; *Studebaker Bros. Mfg. Co. v. Langson,* 89 Wis. 200, 61 N. W. 773. The note was not payable to order but to the claimant, and the question is not the same as if it had been made payable to order and had come into her possession without indorsement. In such cases there has been considerable conflict as to whether mere possession is evidence of delivery and ownership. See note to 50 L. R. A. N. s. 581. When a person is shown to be in possession of personal property such possession is presumed to be rightful. The rule that

such possession is *prima facie* evidence of delivery has been applied to deeds (4 Ency. of Ev. 158), mortgages (8 Ency. of Ev. 728), and we see no good reason why it should not be applied to non-negotiable instruments in the possession of the payee. The presumption is one, however, which is disputable and easily rebutted.

It is urged by the defendants' counsel that because the will and note were executed at the same time, and both were kept in the possession of the deceased in a place where the claimant had access to them, the ordinary presumption does not apply. The belief is expressed by counsel for the defendants that the deceased destroyed his will. If he did destroy it, it would have been quite natural, in order to carry out his long cherished purpose, to deliver the note. Counsel also disavow any claim that claimant wrongfully took possession of the note or sought to convert it. The presumption of delivery arising from her possession is corroborated by the testimony of Grace Samson, who stated that in the summer of 1922, in a conversation with him, the deceased mentioned a will and said that he had provided for the claimant by a paper outside of the will. Mr. Ferris, the attorney for Mr. Wilkinson, gave testimony as to conversations with him after the claimant had delivered the note for safe-keeping, bearing on the question of delivery. This evidence was objected to on the ground that it was privileged as a communication between attorney and client. Since we conclude that there was sufficient other evidence to support the finding that the note was duly delivered, we shall not discuss nor decide the question whether under the circumstances this testimony was competent.

Was the instrument relied on by the claimant testamentary in its character? If so, it fails of validity because not executed as the statute relating to wills requires. Counsel for the defendants expressly state that they do not base this claim that the document is testamentary in its nature merely on the ground that the amount was made payable

at the death of the maker, but because it is apparent from the language and the accompanying circumstances that it was not to take effect until his death, and in the meantime was ambulatory and subject to reservations implying the right of control during his lifetime.   Counsel rely on the arguments that when the instrument was drawn the deceased owed claimant nothing and might never be indebted to her; that a will and the note were executed at the same time and should be construed together; that Mr. Wilkinson believed that by the plan he adopted the inheritance tax would be largely reduced.   Counsel also rely especially on what is called the "reservation," being the last paragraph relating to the payment for future services.   We do not see that the fact that the writings were executed contemporaneously leads to any such conclusion as counsel reach.   There might be infinite speculation as to the reasons for executing the two instruments at the same time.   Of course the will could have been destroyed at any time.   If the note had been destroyed by the deceased before delivery and acceptance it would have ceased to be effectual.   Perhaps it might be argued with quite as much or greater reason that the very fact that a will was made at the same time as the note negatived any intent that the note was testamentary, although of course the intent is not conclusive.   Nor do we see that the manner in which the papers were kept has any tendency to establish the theory of the defense. If, on the contrary, a fair and reasonable construction of the instrument now relied on by claimant should lead to the conclusion that the deceased reserved the right to change or control the amount named in the first paragraph, after delivery and acceptance of the document by the claimant, that would have a very important bearing upon our decision. That paragraph was an unconditional promise to pay a certain sum of money on the death of the maker.

Although it is suggested in one of the appellants' briefs that the agreement was void as a note because it was im-

possible of payment by the maker and the time of payment was indefinite, we do not consider the point well taken. It is well settled that an instrument otherwise valid as an agreement for the payment of money is not invalidated merely because payment is postponed until or after death. All uncertainty ceased on the happening of that event, and it is sure to happen. That is certain which can be made certain. Such promises otherwise valid become liabilities of the estate. *Patterson v. Chapman,* 179 Cal. 203, 176 Pac. 37, 2 A. L. R. 1467.

It is argued that the first and last paragraphs of the note should be construed together, and that the clause providing that payment for future services should not cause the abatement of any general legacies provided or to be provided for by will was a reservation of the right to change or control the promise in the first paragraph. It is very plain that these two portions of the contract relate to entirely distinct and separate subjects. One is a direct promise of payment of what is described as a present indebtedness for past services, while the other relates to an uncertain amount for future services. The clause relating to abatement of legacies is carefully linked with the provision concerning future services and is in no way connected with the first sentence of the instrument. In construing the writing we are bound debtedness. The amount to be paid for future services was to consider all the parts. In so doing it seems clear to us that the paramount and controlling purpose was to make an certain sum on account of what was deemed a present inuncertain and might depend upon many contingencies. The first paragraph of the agreement as to past services is plainly contractual and unconditional. The last paragraph is also contractual but contains a limitation as to the amount payable for future service. It is well settled that the form of a document is not controlling on the question of whether it is testamentary in character. The writing may be on its absolute and unconditional contract for the payment of a

face a note or deed or bond or marriage settlement or assignment or power of attorney or contract and still be testamentary in its nature.    These are only illustrations of many forms which the writing may assume and still be included in the class.    *Templeton v. Butler,* 117 Wis. 455, 94 N. W. 306; 1 Schouler, Wills (6th ed.) §§ 363 *et seq.* If the parts of the contract in question dealing with past and future services were so tied together as to be dependent on each other, there would be more force in the contention of the appellants' counsel.    But we find no such dependency. As said by Mr. Schouler:

"There appears no legal objection to regarding the same instrument as partly a deed or contract and partly a will, partly for present and partly for posthumous operation, if the maker chose to combine these purposes." 1 Schouler, Wills (6th ed.) § 369.

It does not follow that because the note was not to take effect until after the maker's death it was testamentary.    As often happens, the title was vested in the payee on delivery and acceptance although the enjoyment was postponed.    "The mere fact that a writing is to become effective only on the death of the maker is not sufficient to give it testamentary character."    1 Schouler, Wills (6th ed.) § 356.

In determining this question the intention of the maker is important but not conclusive.    It is well settled that extrinsic evidence may be received for the determination of the real question.    The writing was not in the form of a will, but a will duly attested was drawn at the same time by an experienced attorney.    The note was delivered, as we hold, during the life of the maker.    There was no language in the writing indicating that the deceased intended to reserve any right to control during his life the $30,000 agreed to be paid.    In other words, in respect to this agreement the writing was not ambulatory or testamentary in character.

In this connection there is some argument by counsel for the appellants that the plan of the execution of the note and

the will at the same time was adopted with the purpose of evading in part at least the inheritance tax. We are aware that there are some persons who regard the inheritance taxes as a new and added terror to death and that they sometimes adopt ingenious devices to shield their survivors from its burdens. But the argument in this respect rests in sheer speculation and there is not a scintilla of evidence to support it.

It is our conclusion that the findings and judgment of the trial court should be sustained.

*By the Court.*—Judgment affirmed.