ESTATE OF BRADBURY: GORGES, Appellant, vs. ANTHONY, Administrator, Respondent.

*April 8—May 7, 1957.*

For the appellant there was a brief by *Lehner & Lehner* of Princeton, and *Earl F. Kileen* of Wautoma, and oral argument by *Philip Lehner, Sr.*

For the respondent there was a brief by *R. E. Johnson* of Waupaca, and oral argument by *Mr. Johnson* and by *Mr. Gad Jones* of Wautoma.

MARTIN, C. J.    Janette Bradbury died October 17, 1955, at the age of eighty-six years. Her estate consisted of a 39-acre tract of land in Waushara county. She also had, during

her lifetime, a life estate in 240 acres of land; the claimant, Irma Gorges, was remainderman.

Claimant, a niece of the decedent, testified that from 1941 to 1945, while Janette Bradbury lived alone on her life-estate property about a quarter mile from the claimant's home, she made the decedent's meals, did her laundry, and stayed with her overnight; that in 1945 Miss Bradbury came to live with the claimant, occupying two separate rooms in the Gorges home; she remained there until her death.

After Miss Bradbury's death Mrs. Gorges filed a petition for administration of her estate, stating in effect that the decedent owned no property except real estate of the probable value of $5,000 and that she left no debts. Thereafter Mrs. Gorges filed three claims against the estate: One for taxes paid by her on the life-estate property and tax certificates purchased by her on the land held in fee by decedent (allowed by the court); one for the reasonable value of the care of decedent by Mrs. Gorges and her husband (disallowed); and one for $5,000 on a note introduced in evidence as Exhibit G and reading as follows:

"Apr. 18, 1955

"After my death I promise to pay my niece Irma Gorges the sum of $5,000 five thousand dollars for value received.
"Janette Bradbury."

It is not disputed that the note is in the handwriting of Irma Gorges and the signature is that of Janette Bradbury.

In disallowing the last claim, it was the trial court's opinion that claimant failed to prove execution and delivery of the note.

It was the testimony of Irma Gorges that Miss Bradbury had no money and that she was the only one of the relatives who ever did anything for her; that she wrote the note at the request of the decedent and placed it in the family Bible which she kept in the dresser in her own bedroom; that she

never told anyone about the note; that the Bible was accessible to and used by all the family, but was used most by Miss Bradbury, who was the most religious member of the family. Three other papers, the property of Miss Bradbury, were also kept in the Bible; these related to family history and information of interest to the decedent.

Other than the self-serving testimony of the claimant, Mrs. Mildred Kohl was the only witness who testified with respect to the execution of the note. She testified that she made a number of friendly visits to the decedent, and Miss Bradbury told her she appreciated the care and kindness of Mrs. Gorges and her husband; that on one occasion in May of 1955, Miss Bradbury went to Irma's bedroom and brought out the note which she asked her to read, saying, "Mrs. Kohl, I have done what I wanted to do for a long time and I want to show it to you;" that Irma had been very good to her for years and she felt she owed her a big debt and she had made it right.

At a hearing on March 23, 1956, claimant's counsel showed Mrs. Kohl Exhibit I, which was a typewritten carbon copy of the writing contained in Exhibit G. She was asked:

"Q. I show you Exhibit I and ask you to read it and tell us whether that is a copy of the note that Janette Bradbury showed to you. A. No, it is not. That she was going to leave her $5,000 but there was a note of other writing on the note. It was in longhand you know.

"Q. But this is the substance of the note? A. Yes. Exactly.

"Q. Do you know what else was on the sheet? A. Well, just for her kindness and for doing things up on the place where she lived. . . ."

She gave the following testimony on cross-examination:

"Q. So that we understand each other then, Mrs. Kohl, it is your testimony that the note would make mention of some

things that they had done in connection with the buildings and also did it make mention of the care that they had provided for her? *A.* Yes, that it did.

"*Q.* And those were specifically mentioned in the note that you saw? *A.* Yes, I am sure that it did."

The hearing was adjourned to April 12, 1956, at which time Mrs. Kohl testified as follows:

"*Q.* I show you Exhibit G. Look that over carefully and I ask you is that the note that Janette Bradbury showed to you? *A.* That's the note.

"*Q.* Are you sure of that? *A.* I am very sure."

On cross-examination she admitted that Exhibit I was a copy of Exhibit G and stated that she was mistaken and confused on the occasion of her previous testimony because "there was so much going on there that day;" that she misunderstood the question put to her; that in recalling the occasion on which Miss Bradbury showed her the note she had thought the note recited some of the things that the decedent had said to her.

In the opinion of the trial court, "The testimony of Mrs. Kohl which was produced in an effort to substantiate the execution of the note, was confused and, in the opinion of the court, does not meet the degree of proof required to substantiate execution."

The credibility of the witness was for the trial court. *Graham v. Zellers* (1931), 205 Wis. 542, 238 N. W. 385; *Estate of Evans* (1946), 248 Wis. 456, 22 N. W. (2d) 497. Mrs. Kohl's testimony was contradictory and confused and the court was entitled to regard it as unreliable. As stated in *Caballero v. Litchfield Wood-Working Co.* (1956), 246 Minn. 124, 129, 74 N. W. (2d) 404, 408:

"Clear, positive, direct, and undisputed testimony by an unimpeached witness, which is not in itself contradictory or improbable, cannot be rejected or disregarded by either court or jury, unless the evidence discloses facts and cir-

cumstances which furnish a reasonable ground for so doing. Such testimony can be rejected only when doubt is cast upon its truthfulness by contradictory or discrediting facts or circumstances. The testimony of a witness may be disregarded if it contains inherent improbabilities or contradictions which, alone or in connection with other circumstances in evidence, furnish a reasonable ground for concluding that the testimony is not true."

The trial court further stated that, "A review of the testimony does not reveal adequate proof of delivery of the note to the claimant, Irma Gorges."

Appellant urges that the evidence shows the note was always in her possession, a fact that is *prima facie* evidence of delivery, citing *Sheldon v. Blackman* (1925), 188 Wis. 4, 205 N. W. 486. The evidence is that the note was kept in the Gorges family Bible along with other papers kept by the decedent. The Bible, though owned by the claimant and kept in her bedroom, was used by all the members of the family and, indeed, was most frequently used by Miss Bradbury, who had access to it at all times and permission to use it for as long as she desired. She could have removed the note from the Bible at any time; she could have destroyed it. But it remained in the Bible, along with other papers personal to Janette Bradbury which it is not claimed were given to Irma Gorges.

The evidence gives rise to a number of inconsistencies and contradictions in the conduct of the claimant. Five thousand dollars is a rather large sum of money; it was, in fact, the amount of the total valuation she placed upon the estate. In her petition for administration she stated that the decedent left no debts; yet she obviously regarded the note as evidence of a debt. If, as she says, the note was given to pay her for care and services to Miss Bradbury, why the delay in presenting it to the court? And, again, if it was meant to be payment for care, why file a separate claim for

the reasonable value of such care? She maintains the note was in her possession at all times; then why the secrecy about it; why keep it in a place where others, and particularly the maker, had constant access to it?

Considering all the circumstances which the evidence discloses, the trial court was entitled to conclude that delivery had not been adequately proved.

*By the Court.*—That part of the judgment appealed from is affirmed.