REDLIN, Respondent, v. UNION MUTUAL LIFE INSURANCE COMPANY, Appellant.

*No. 162. Argued October 5, 1972.—Decided October 31, 1972.*
(Also reported in 201 N. W. 2d 497.)

For the appellant there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland, S.C.,* attorneys, and *Richard C. Ninneman* and *Michael T. Hart* of counsel, all of Milwaukee, and oral argument by *Mr. Hart.*

For the respondent there was a brief by *Robert J. Urban,* attorney, and *Grodin & Strnad* of counsel, all of Milwaukee, and oral argument by *Burton A. Strnad.*

HANLEY, J. Three issues are raised on appeal:

(1) Was it error for the trial court to find the deposition testimony of appellant's only witness, Travers, to be incredible;

(2) Was the deceased covered for insurance purposes, even if it is found that notice of termination was given to him; and

(3) Is the defendant, Union, entitled to a new trial in the interest of justice by order of this court, pursuant to sec. 251.09, Stats. ?

*Credibility of witness.*

Mr. Travers, the defendant's only witness, testified that close to within three days of July 17th he saw de-

ceased at his office, took his briefcase and orally notified him of his termination. But, at the time of making Exhibit 2, a termination card, Travers noted he had not seen deceased for over two weeks and had not received the briefcase. Exhibit 2 was written July 17th. He further testified that it is probably safe to say that he met with deceased before July 25, 1967. When advised that the deceased was hospitalized through the month of July, 1967, the witness testified that he might well have spoken to deceased in August, 1967. Travers also testified that he terminated deceased's employment at a time when he had not notified him, although the employment contract required notice.

Appellant contends that it was error for the trial court to find the testimony of Travers to be incredible. The basis of his contention is that Travers' testimony is clear, positive and direct, and not in itself contradictory or improbable; and therefore the trial court was bound as a matter of law to believe him when he testified that he had orally given notice of termination to the deceased.

Appellant's contention is no more than a restatement of the rule which has long guided the court in determining whether or not the finder of fact in a particular case had reasonable grounds for disbelieving a witness' testimony. In *Estate of Bradbury* (1957), 275 Wis. 564, 567, 568, 82 N. W. 2d 804, the court adopted the language of the Minnesota Supreme Court as the rule to be followed in Wisconsin:

". . . As stated in *Caballero v. Litchfield Wood-Working Co.* (1956), 246 Minn. 124, 129, 74 N. W. (2d) 404, 408:

" 'Clear, positive, direct, and undisputed testimony by an unimpeached witness, which is not in itself contradictory or improbable, cannot be rejected or disregarded by either court or jury, unless the evidence discloses facts and circumstances which furnish a reasonable ground

for so doing. Such testimony can be rejected only when doubt is cast upon its truthfulness by contradictory or discrediting facts or circumstances. The testimony of a witness may be disregarded if it contains inherent improbabilities or contradictions which, alone or in connection with other circumstances in evidence, furnish a reasonable ground for concluding that the testimony is not true.' "

This statement of the rule was reaffirmed in *Davies v. J. D. Wilson Co.* (1957), 1 Wis. 2d 443, 479, 85 N. W. 2d 459.

The finding of incredibility by the trial court was based on alleged conflicts or inconsistencies between Travers' testimony and admitted facts.

The trial court noted the fact that Travers was willing to concede that the alleged conversation with the deceased could have occurred in August, only after he learned that the deceased was in the hospital almost the entire month of July and the first two days of August.

Appellant contends that at no time did Travers profess to recall the exact date of the conversation with the deceased concerning his termination; and only after repeated attempts by respondent's counsel to pin him down was he finally willing to allow that it was probably safe to say that he met with the deceased before July 25th. It is true the witness did not testify as to an exact date; however, it is obvious he was attempting to establish a date close to the date of execution of the Employee's Final Pay Information on July 17, 1967. Admittedly the witness violated the contract of employment when he made out the Employee's Final Pay Information without giving any notice to the employee. It was Travers who volunteered the July dates, even though he knew the event he was testifying about occurred three and one-half years earlier.

Travers testified that on July 17th he made out an Employee's Final Pay Information. On the document he stated as the reason for termination:

"Haven't seen him for over 2 weeks. Unable to contact him so far."

The first alleged inconsistency between the document and Travers' testimony is that he originally testified that he didn't know whether he filled out the document before or after talking to the deceased:

". . . I'd say it would be approximately before or after."

The conflict arises from the face of the document which states that he had not seen the deceased for over two weeks.

The second alleged conflict is between the recitation on the document that he had not received the company's briefcase and Travers' testimony that the deceased returned the briefcase at the time of their conversation.

Appellant contends that this alleged inconsistency is, in fact, not inconsistent. He argues that the record is clear that Travers never testified that the conversation and the filling out of the document were contemporaneous acts. Although the testimony bears out appellant's claim that the conversation and the filling out of the document were separate occurrences, it must be noted that only after Travers learned of the exact period of deceased's hospitalization did he ever completely abandon the position that it was possible the conversation occurred prior to his filling out the document.

We think these inconsistencies evidence a pattern of confusion and contradiction on the part of Travers that could reasonably support a determination by the trier of fact that his testimony was incredible. For, as stated by the court only last term in *State ex rel. Brajdic v. Seber* (1972), 53 Wis. 2d 446, 450, 451, 193 N. W. 2d 43:

"Discrepancies in the testimony of a witness do not necessarily render it so incredible that it is unworthy of belief as a matter of law. Testimony may be so confused, inconsistent, or contradictory as to impair credibility as to parts of the testimony without being so incredible that all of it must be rejected as a matter of law. It is the function of the jury to determine where the truth lies in a normal case of confusion, discrepancies, and contradictions in testimony of a witness. *Stewart v. Olson* (1926), 188 Wis. 487, 206 N. W. 909; *Smith v. Koch* (1945), 247 Wis. 551, 20 N. W. 2d 566; *Lehman v. Sentry Ins. Co.* (1967), 35 Wis. 2d 96, 150 N. W. 2d 333."

We conclude there is sufficient confusion, inconsistency and contradiction in Travers' testimony as to preclude the trial court from finding his testimony worthy of belief, as a matter of law.

In view of our ruling on the issue of credibility, the second issue, whether there is insurance coverage even if notice of termination was given, becomes moot.

*New trial in interest of justice.*

The appellant's final contention is that a new trial should be granted, under sec. 251.09, Stats., because the trial court did not understand the testimony of Travers.

We are satisfied that from the trial court's statements in its oral decision it completely understood the testimony of Travers. We believe the issue of credibility has been fully and fairly tried and determined by the trial court.

*By the Court.*—Judgment affirmed.