IN the MATTER OF the ESTATE OF James T. BALKUS, deceased: Ann VESELY, Appellant,

v.

SECURITY FIRST NATIONAL BANK OF SHEBOYGAN TRUST DEPARTMENT, Personal Representative, Respondent.

Court of Appeals

*No. 84–2415. Submission on briefs October 9, 1985.—Decided December 18, 1985.*
(Also reported in 381 N.W.2d 593.)

For the appellant, a brief was filed by *John J. Nikolay* of *Nikolay, Jensen, Scott & Gamoke* of Abbotsford.

For the respondent, a brief was filed by *Donald E. Koehn* of Sheboygan Falls.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.  Ann Vesely appeals from a judgment denying her claims against the estate of her brother, James T. Balkus. Vesely claims that she is entitled to payment on deposit slips and promissory notes found amongst Balkus's possessions because, as a holder in due course, she takes them free from the defenses asserted by the personal representative of the estate. We conclude the deposit slips are not negotiable instruments and, therefore, Vesely is not a holder in due course. We also conclude that the promissory notes are subject to the personal representative's defense of nondelivery because Vesely is not a holder in due course. Finally, we reject Vesely's claim of constructive delivery.

James T. Balkus died intestate on December 4, 1983. Shortly after his death, Vesely examined Balkus's personal property and discovered six deposit slips from a savings account maintained by Balkus. On each slip was a handwritten notation:

Payable to Ann Balkus Vesely on P.O.D. The full amount and other deposits.[1]

---

[1] Some of the deposit slips contained a slightly different notation:

Each slip was dated and signed by Balkus. Both parties treated "P.O.D." as meaning "payable on death." Vesely also found two promissory notes, both of which were made payable to her order. Each note was in the amount of $6000 and provided for five percent interest.[2] One note was dated March 23, 1961 and the other was dated July 10, 1963.

Vesely filed claims against Balkus's estate requesting payment on the deposit slips and the promissory notes. The circuit court disallowed Vesely's claims.

On appeal, Vesely argues that both the deposit slips and the promissory notes are negotiable instruments under Wisconsin's Uniform Commercial Code (UCC), chs. 401–409, Stats. Vesely further argues that under the UCC she is a holder in due course of the instruments and therefore takes the instruments free from the defenses asserted by the personal representative. We reject these arguments.

Vesely's arguments require this court to apply certain sections of the UCC to the fact situation presented. The application of a statute to a particular set of facts presents a question of law. *Maxey v. Redevelopment Authority of Racine,* 120 Wis.2d 13, 18, 353 N.W.2d 812, 815 (Ct. App. 1984). As such, we owe no deference to the trial court's conclusions. *First National Leasing Corp. v. City of Madison,* 81 Wis.2d 205, 208, 260 N.W.2d 251, 253 (1977).

---

Payable to Ann Balkus Vesely on
P.O.D. The full amts. & other
succeeding deposits.

[2] Vesely apparently loaned Balkus $12,000 in the early 1960's.

## DEPOSIT SLIPS

■
We first address Vesely's contention that the endorsed deposit slips are negotiable instruments. Section 403.104(1), Stats., defines a negotiable instrument:

Any writing to be a negotiable instrument within this chapter must:

(a)   Be signed by the maker or drawer; and

(b)   Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and

(c)   Be payable on demand or at a definite time; and

(d)   Be payable to order or to bearer.

We conclude that the endorsed deposit slips are not negotiable instruments because they fail to meet the requirement that the writing be payable at a definite time. Section 403.109(2), Stats., states that an instrument which is "payable only upon an act or event uncertain as to time of occurrence is not payable at a definite time." The 1961 Report of the Wisconsin Legislative Council indicates that sec. 403.109(2) "[m]akes post obituary notes non-negotiable, even after the death has occurred." *See* Wis. Stats. Ann., sec. 403.109 (West 1964). *See also* Official UCC Comment, *id.; Rotert v. Faulkner,* 660 S.W.2d 463, 466–67 (Mo. Ct. App. 1983).[3]

---

[3] Vesely cites *Sheldon v. Blackman,* 188 Wis. 4, 205 N.W. 486 (1925), in support of her contention that "payment on death" represents a definite time and therefore the deposit slips are negotiable instruments. *Sheldon,* however, was decided before Wisconsin

Because the "payable on death" term of the deposit slips makes the instrument payable upon an event uncertain as to the time of occurrence, *i.e.*, the date of Balkus's death, the endorsed deposit slips are not payable at a definite time and are therefore not negotiable instruments. In order to qualify as holder in due course, Vesely must hold a negotiable instrument. *See* secs. 403.302 and 403.305, Stats. Vesely, thus, is not a holder in due course.[4]

## PROMISSORY NOTES

### Holder in Due Course

We now turn to Vesely's arguments concerning the promissory notes she found in Balkus's possessions after his death. Vesely claims the notes are negotiable

---

adopted the UCC. Both the Legislative Council's report and the Official UCC Comments indicate that the UCC changed prior law in which instruments payable upon death were considered negotiable. *See* Wis. Stats. Ann. sec. 403.109 (West 1964).

[4] The circuit court also denied Vesely's claim to the savings account proceeds, reasoning that: (1) if considered a gift, it was incomplete because the slips were not delivered; (2) if considered a testamentary bequest, it did not meet the requirements of a will; and (3) Vesely was not named as an owner or beneficiary in the bank's records regarding the savings account. Vesely does not challenge these determinations on appeal and relies solely on her argument that she is a holder in due course of a negotiable instrument. As these determinations are not challenged, we do not address them.

Given our conclusion that the endorsed deposit slips do not meet the requirements of sec. 403.104(1)(c), Stats., we do not consider whether the deposit slips meet the other requirements of sec. 403.104(1).

instruments and she is a holder in due course, taking the notes free from the defense of nondelivery asserted by the personal representative.

A holder in due course is a holder who takes an instrument for value, in good faith, and *without notice* that the instrument is overdue or has been dishonored or *of any defense against or claim to it* on the part of any person. Sec. 403.302(1), Stats. As payee of the notes, Vesely can be a holder in due course. *See* sec. 403.302(2). A payee who acquires the status of a holder in due course is, however, the exception rather than the rule. *Saka v. Sahara-Nevada Corp.,* 558 P.2d 535, 536 (Nev. 1976). "Where the payee is an immediate party to the underlying transaction, under normal circumstances he cannot claim this status [holder in due course] because he necessarily knows of any defenses to the contract." *Id. See also Courtesy Financial Services, Inc. v. Hughes,* 424 So.2d 1172, 1175 (La. Ct. App. 1982).

Here, as payee of the notes, Vesely necessarily had notice and knowledge of the personal representative's defense of nondelivery because the notes were never delivered to her. Vesely's claim as a holder in due course therefore fails.

Constructive Delivery

Since Vesely is not a holder in due course of the notes and thus takes the notes subject to the defenses asserted by the personal representative, *see* sec. 403.306, Stats., we now look to the defense of nondelivery asserted by the personal representative. It is undis-

puted that Balkus did not physically deliver the notes to Vesely. She argues, however, that a letter she received from Balkus in August 1974 constituted constructive delivery of the notes. The letter, in pertinent part, stated:

Also you will get & shall I say I will bequeath to you all my other junk in my apt. such as tools, radios, TV sets, clothing, clothes and also the money I owe you. I have $6000 in govt. bonds made out in your name & the banker told me, nobody could take it away from you. I also have 2 judgment notes made out to you for the amt. of money I borrowed from you in 1961 & 1962. That should take care of the interest I was supposed to pay you but I didn't.

We reject Vesely's claim that this letter constituted constructive delivery of the notes.

The trial court found that Balkus retained dominion and control of the notes and that he "simply never gave up ownership." These findings are not clearly erroneous. *See* sec. 805.17(2), Stats.

The general rule is that a promissory note has no effect unless it is delivered. *Chipman v. Tucker,* 38 Wis. 43, 48–49 (1875); *Casto v. Martin,* 230 S.E.2d 722, 729 (W.Va. 1976). The UCC defines delivery of an instrument as the "voluntary transfer of possession." Sec. 401.201(14), Stats. A constructive delivery may be sufficient. *Casto* at 729. A constructive delivery occurs only when the maker indicates an intention to make the instrument an enforceable obligation against him or her by surrendering control over it and intentionally placing it under the power of the payee or a third person. *City National Bank of Miami v. Wernick,* 368 So.2d

253

934, 937 (Fla. Dist. Ct. App. 1979); *Wolfe v. Eaker,* 272 S.E.2d 781, 783 (N.C. Ct. App. 1980).

■

Balkus never surrendered control nor transferred possession of the notes. It is undisputed that the notes were found in Balkus's possessions after his death. The notes were never placed under the control of Vesely or any other third party. We therefore reject Vesely's argument that the letter served as constructive delivery of the notes.

Assuming Holder in Due Course Status

■

Alternatively, even assuming Vesely is a holder in due course, we reject her argument that she takes the notes free from all defenses. Section 403.305, Stats., outlines the rights of a holder in due course:

To the extent that a holder is a holder in due course he takes the instrument free from:
(1)    All claims to it on the part of any person; and
(2)    *All defenses of any party to the instrument with whom the holder has not dealt except. . . .* [Emphasis added.]

A holder in due course, therefore, does not take an instrument free from the defenses of any party to the instrument with whom the holder has dealt. *See, e.g., Bucci v. Paulick,* 419 A.2d 1255, 1258 (Pa. Super. Ct. 1980). Balkus, as maker of the notes, was a party to the instrument and the personal representative stands in his place. *See generally* secs. 857.01 and 857.03, Stats.

Here, Vesely dealt with Balkus. She loaned him $12,000. He wrote a letter to her indicating that he had notes in his possession which would pay her back. There were no other parties involved in making the notes nor any transfer of the notes to a third party. Under sec. 403.305, Stats., therefore, Vesely cannot take the notes free from the personal representative's defense of nondelivery because she dealt with Balkus.[5]

*By the Court.*—Judgment affirmed.

[5] In light of our holdings, we do not address the statute of limitations arguments raised by the parties.

Vesely also asks that we, in equity, fashion a remedy and a result reversing the trial court and upholding Vesely's position on appeal. She, however, cites no cases or authority in support of her argument. In light of the inadequate briefing of this issue, we decline to address it. *Reiman Associates, Inc. v. R/A Advertising, Inc.*, 102 Wis.2d 305, 306 n.1, 306 N.W.2d 292, 294 (Ct. App. 1981).