**CHARMGLOW PRODUCTS, INC., Plaintiff,**

v.

**MITCHELL STREET STATE BANK, First Wisconsin Northwestern National Bank of Milwaukee, and Hambro, Inc., Defendants.**

Civ. A. No. 86–C–1207.

United States District Court, E.D. Wisconsin.

June 10, 1988.

---

Fred A. Erchul, II, Lichtsinn, Haensel, Bastian, Erchul & Crocker, Milwaukee, Wis., and Donald Flayton, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for plaintiff.

Thomas L. Shriner, Jr., Brian W. McGrath, Foley & Lardner, Milwaukee, Wis., for First Wisconsin Northwestern Nat. Bank.

Randall L. Nash, Smith & O'Neil, Milwaukee, Wis., for Mitchell Street State Bank.

Michael J. Cramer, Cunningham, Lyons, Steele & Cramer, Milwaukee, Wis., for Hambro.

## ORDER

REYNOLDS, Senior District Judge.

Plaintiff Charmglow Products, Inc. ("Charmglow") alleges that defendant First Wisconsin Northwestern National Bank ("FWN") of Milwaukee has converted the proceeds of certain checks in violation of Wis.Stats. § 403.419. FWN has moved for summary judgment and Charmglow has opposed the motion. The court has considered the parties' positions and will deny defendant FWN's motion for summary judgment.

## FACTS

The facts relevant to consideration of this motion are undisputed. In 1985, Johnson Energy Systems, Inc. was in the busi-

ness of manufacturing and selling wood-burning stoves. On or about August 2, 1985, Charmglow purchased the assets of Johnson Energy Systems, Inc., and Charmglow acquired the name Johnson Energy Systems. Johnson Energy Systems, Inc. changed its name to JES Inc. On or about August 7, 1985, JES Inc. opened a new checking account at FWN for a new company, Hambro, Inc. Hambro did business as The JES Co.

FWN was aware that negotiations were taking place between Charmglow and Johnson Energy Systems; however, FWN did not know what was sold to Charmglow or when it was sold (Deposition of Errol Hohmann, pp. 31–32). The old account for Johnson Energy Systems at FWN remained open after the sale.

Charmglow, pursuant to its right to use the name Johnson Energy Systems, began doing business formerly done by Johnson Energy Systems under the name Johnson Energy/Charmglow. Charmglow notified the customers of Johnson Energy Systems of the change in ownership, and purchase invoices displayed the company's new name. However, Charmglow's customers did not immediately adjust to the change and, as a result, several checks intended to pay Charmglow were received and cashed by The JES Co. (Motion for Summary Judgment, Exhibit F).

Charmglow's claim against FWN involves 23 checks written between October 9, 1985 and January 24, 1986. Four checks have not been produced. Of the remaining nineteen checks, eleven are made payable only to Johnson Energy Systems and eight are made jointly payable to Johnson Energy Systems and Charmglow. Nine of these checks were never delivered to Charmglow. All of the checks were endorsed by The JES Co. and deposited into The JES Co.'s account (Opposition to Summary Judgment, Exhibit 6, Motion for Summary Judgment, Exhibit D). The owners of The JES Co. were Howard, Arlyn and Melvin Johnson who were long-standing customers of FWN. Prior to the sale of the assets of Johnson Energy Systems to Charmglow, Johnson Energy Systems used a logo with the acronym JES. FWN states that it viewed JES and Johnson Energy Systems as interchangeable (Affidavit of Errol Hohmann, ¶ 8, Affidavit of Arlyn Johnson).

## LEGAL ARGUMENTS AND ANALYSIS

FWN argues that Charmglow does not have standing to sue for conversion for the nine checks that were delivered to Johnson Energy Systems and not to Charmglow. FWN argues that with regard to the remaining checks, it was commercially reasonable for FWN to cash the checks as endorsed and that the checks which Charmglow has not produced to date should not be considered. FWN also argues that Charmglow should be estopped from asserting its claim because Charmglow did not notify FWN of its claim for six months after the last check was cashed.

Charmglow argues that it has standing to sue for conversion on all of the checks because delivery is not a prerequisite for a suit for conversion. Charmglow further argues that it was not commercially reasonable for FWN to cash the checks as endorsed. Finally, Charmglow contends that it is not estopped from suing for conversion and that Charmglow can still sue for conversion on the checks it has not yet produced because FWN retains copies of these checks and their production has been sought.

This court must first determine whether Charmglow has standing to sue for the nine checks that were never actually delivered to Charmglow. The issue of whether or not delivery is a prerequisite to an action for conversion under the UCC is not firmly decided; and legal authority can be found to support either position. *See Lund v. Chemical Bank,* 665 F.Supp. 218, 224–226 (S.D.N.Y.1987) and authority cited therein. There are no cases addressing whether the State of Wisconsin would hold that delivery is a prerequisite to an action for conversion.

FWN argues that because the State of Wisconsin requires delivery of other instruments such as deeds and notes for these instruments to be effective, Wisconsin

would also require delivery as a prerequisite to an action for conversion. *See In Matter of the Estate of Balkus,* 128 Wis.2d 246, 381 N.W.2d 593 (Ct.App.1985). Charmglow argues that the State of Wisconsin would not make delivery a prerequisite and that even if Wisconsin did require delivery as a prerequisite to an action for conversion, this burden has been met because constructive delivery has occurred.

 "A constructive delivery occurs only when the maker indicates an intention to make the instrument an enforceable obligation against him or her by surrendering control over it and intentionally placing it under the power of the payee or a third person." *Estate of Balkus,* 128 Wis.2d at 253, 381 N.W.2d 593, citing *City National Bank of Miami v. Wernick,* 368 So.2d 934, 937 (Fla.Dist.Ct.App.1979). It is undisputed that the makers of the nine checks at issue sent the checks fully intending to pay Charmglow and not The JES Co. Therefore, a constructive delivery has occurred. This court need not decide whether the State of Wisconsin would hold that delivery is a prerequisite to an action for conversion, because this court is satisfied that the State of Wisconsin would recognize constructive delivery of the checks to Charmglow and, thus, Charmglow would have standing even if delivery were a prerequisite. *Estate of Balkus,* 128 Wis.2d at 253, 381 N.W.2d 593.

FWN argues that Charmglow should be estopped from pursuing its claim and, in any event, should be precluded from suing on the four checks it has not produced. Approximately six months passed from when the last check was cashed until Charmglow asserted its claim against FWN, and the parties seem to dispute what occurred in the intervening time. At present, the record before the court is insufficient to constitute an estoppel to Charmglow's claim. With respect to the missing four checks, it appears that FWN could produce these checks, but the parties have some dispute concerning who should bear the cost of their production. Since the court is denying FWN's motion for summary judgment on the other checks, the court will not grant summary judgment against Charmglow for failing to produce checks that are in FWN's possession.

The remaining question for this court to consider is whether it was reasonable for FWN to cash checks made out to Johnson Energy Systems and endorsed The JES Co. FWN has stated that it believed Johnson Energy Systems and The JES Co. were interchangeable; however, this court does not know whether Johnson Energy Systems endorsed checks as The JES Co. in the past. FWN's statement, without more, presents a credibility question for the jury. Moreover, FWN's experts state that it was reasonable for the bank to cash the checks as endorsed. This again presents a question for the jury. The jury is free to accept or reject an expert opinion regardless of whether an opposing opinion is offered. This court will deny FWN's motion for summary judgment because the reasonableness of FWN's action presents a credibility question for the jury.

IT IS ORDERED that First Wisconsin Northwestern National Bank's motion for summary judgment is denied.