**Russell T. LUND, Jr., Lund's, Inc., and Wardwell M. Montgomery, Plaintiffs,**

v.

**CHEMICAL BANK, Defendant.**

**CHEMICAL BANK, Third–Party Plaintiff,**

v.

**LAIDLAW ADAMS & PECK, INC., Third–Party Defendant.**

**No. 84 Civ. 1621 (RWS).**

United States District Court, S.D. New York.

March 27, 1991.

Dorsey & Whitney by James R. Kahn, of counsel, New York City, Fredrikson & Byron, P.A. by Ted S. Meikle, and F. Chet Taylor, of counsel, Minneapolis, Minn., for plaintiff Lund's, Inc.

Chemical Bank by Barbara E. Daniele, and James L. Condren, of counsel, New York City, for defendant Chemical Bank.

## OPINION

SWEET, District Judge.

Defendant Chemical Bank ("Chemical") has moved pursuant to Rules 54 and 58 of the Federal Rules of Civil Procedure for entry of judgment in its favor in accordance with the opinion dated February 16, 1990, which granted its motion for summary judgment. Plaintiff Lund's, Inc. ("LI") has renewed its motion for reconsideration of the February 16 opinion. For the following reasons, the motion for reconsideration is granted and on reconsideration the February 16 opinion is affirmed, with judgment to be entered in favor of Chemical pursuant to the earlier opinion.

## BACKGROUND

The parties, facts, and prior proceedings in this case are set forth in detail in the numerous prior opinions, familiarity with which is assumed. *Lund v. Chemical Bank*, 665 F.Supp. 218, (S.D.N.Y.1987) (*"Lund's I"*) and *Lund v. Chemical Bank*, 675 F.Supp. 815 (S.D.N.Y.1987) (*"Lund's II"*), *rev'd, Lund's, Inc. v. Chemical Bank*, 870 F.2d 840 (2d Cir.1989) (*"Lund's III"*), *on remand, Lund v. Chemical Bank*, 84 Civ. 1621, 1990 WL 17711 (S.D.N.Y. February 16, 1990) (*"Lund's IV"*).

In *Lund's IV*, summary judgment was granted to Chemical principally on the basis of the then-recent New York state court decision in *State v. Barclays Bank of New York, N.A.*, 151 A.D.2d 19, 546 N.Y.S.2d 479 (3d Dep't 1989) (*"Barclays I"*). On

March 6, LI moved for reconsideration of *Lund's IV* in light of the fact that the Court of Appeals of New York had granted review in *Barclays I*. On May 4, 1990 that motion was granted by memorandum endorsement "pending the determination of the *Barclays Bank* case in the Court of Appeals."

On October 18, 1990 the Court of Appeals issued its opinion affirming *Barclays I*. *State v. Barclays Bank of New York, N.A.*, 76 N.Y.2d 533, 561 N.Y.S.2d 697, 563 N.E.2d 11 (1990) (*"Barclays II"*). Chemical thereupon moved for entry of judgment pursuant to the decision in *Lund's IV*, and LI in response argued in support of its original motion for reconsideration of that decision.[1] Oral argument was heard on November 30, 1990.

DISCUSSION

*1. The Check Was Not Constructively Delivered to LI.*

■ In light of *Barclays II*, the only issue presented here is whether or not check no. 56853 for $400,000 ("the Check"), drawn on Chemical by Laidlaw, Adams & Peck, Inc. ("Laidlaw") originally payable to Flight Transportation Corporation ("FTC"), was constructively delivered to LI when it was endorsed by FTC's secretary payable to LI and given to William Rubin ("Rubin"), FTC's president to deliver to LI.[2]

In *Lund's IV*, this question was considered and decided in Chemical's favor, on the basis of the *Barclays I* discussion of the concept of constructive delivery: "[*Barclays I*] contemplates that there can be 'constructive' delivery, but such delivery occurs when the check is physically delivered 'into the hands' of a co-payee or an agent of the payee." *Lund's IV* at 8 (citing *Barclays I*, 151 A.D.2d at 21, 546 N.Y. S.2d at 481).

■ The Court of Appeals confirmed that no constructive delivery had occurred in *Barclays II*, specifically distinguishing the situations in which an instrument is given to an agent of the payee, 76 N.Y.2d at 539, 561 N.Y.S.2d at 700, 563 N.E.2d at 14, or to "a nonagent third party either in its capacity as sole payee with intended delivery to plaintiff or as plaintiff's copayee." *Id.* at 539 n. 4, 561 N.Y.S.2d at 700 n. 4, 563 N.E.2d at 14 n. 4 (distinguishing *Charmglow Products v. Mitchell St. State Bank*, 687 F.Supp. 448 (E.D.Wis.1988)). As regards this factor, Rubin was neither the payee nor co-payee of the Check, and LI has presented no evidence—aside from its belated ratification theory, discussed below—that he was LI's agent and not merely its purported agent under the forged power of attorney.

LI's argument rests primarily on *Wolfin v. Security Bank*, 170 A.D. 519, 156 N.Y.S. 474 (1st Dep't 1915), *aff'd* 218 N.Y. 709, 113 N.E. 1068 (1916). In that case, the drawer of the check in question had given it directly to the named payee after requiring the payee to endorse the check to a third party, and directed that the payee deliver the check to the third party. This was held to constitute constructive delivery to the third party which entitled that party to sue for wrongful payment of the check. LI asserts that the *Barclays II* court indicated that *Wolfin* is still good law, and that under *Wolfin* the Check here was constructively delivered to LI.

■ The argument is somewhat complicated by the fact that LI urges two separate theories of constructive delivery: first from FTC to LI by conveyance to Rubin and secondly from Laidlaw to LI by con-

---

**1.** Although LI did not formally identify its papers as being in support of its earlier motion, they must be construed as such, for only by altering the *Lund's IV* decision can LI escape the adverse judgment sought by Chemical here.

**2.** As described in earlier opinions, Rubin in fact forged an endorsement as LI's "attorney-in-fact," then negotiated the Check back to Laidlaw to satisfy an obligation of his own. Laidlaw subsequently deposited the Check in its account at Chemical. LI's action against Chemical is based on § 3–419 of the N.Y.U.C.C. for conversion by means of instrument paid on a forged endorsement. *Barclays II* conclusively established as New York law that a payee may maintain such an action against a depositary bank only if the payee at some time possessed the instrument in question.

veyance to FTC. The latter theory (which appears to have been raised for the first time on the present motion) must be rejected, as there is no support for LI's assertion that Laidlaw gave the Check to FTC with the intention that it be conveyed to LI. Whether or not Laidlaw was aware of FTC's plan to use the Check to satisfy FTC's own obligation to LI, it did not this a condition to the conveyance of the Check to FTC. *Compare Wolfin,* 156 N.Y.S. at 475 (drawer would not deliver check to named payee until named payee had endorsed it over to drawer's intended third party recipient).

■ As for the constructive delivery from FTC to LI, the *Barclays II* court clarified its view of *Wolfin:* "Unlike the case at bar ... in *Wolfin* the drawer retained no control after the *Check was delivered to the named payee as a fully negotiable instrument."* 76 N.Y.2d at 540, 561 N.Y.S.2d at 700, 563 N.E.2d at 14 (emphasis added). Here the Check, as endorsed by FTC payable to LI was not "fully negotiable" until delivery to LI. As Rubin was not the named payee under this endorsement, FTC's conveyance to Rubin simply does not satisfy the *Barclays II* concept of constructive delivery to LI.

### 2. LI's Estoppel and Ratification Arguments Are Rejected.

LI also advances two new theories by which it might escape the summary judgment here: (1) Chemical is estopped from arguing that LI never possessed the Check because its acceptance of the Check—allegedly in violation of its own procedures and without verifying Rubin's authority to endorse the Check—reflected its belief that the Check had been properly delivered to LI; and (2) LI retroactively ratifies Rubin's action as its agent in accepting the Check, while disavowing his subsequent endorsement of it.

■ In the first place, these new arguments are untimely: there have been at least three prior decisions in this case dealing with some aspect of the delivery question, yet LI has never before made these arguments. Moreover, it did not do so

even in its original papers on the present motion for reconsideration, although clearly neither new theory depends on the Court of Appeals' resolution of *Barclays II.* In light of these prior opportunities to present the arguments and the absence of any explanation for the failure to do so, both theories must be rejected.

■ In the alternative, both arguments lack merit. The estoppel argument is essentially a statement that Chemical's acceptance of the Check indicated the bank's belief that the endorsement was proper and that it cannot now deny this belief. As Chemical points out, LI has not adduced any evidence to support the allegation that the bank did not follow normal banking procedures in accepting the Check. Moreover, accepting LI's position would vitiate the delivery requirement of *Barclays II,* as any endorsement, forged or not, necessarily implies that the proper payee at one time possessed the instrument, so that anyone who accepted a forged instrument would be estopped from asserting that the instrument had not been delivered to the payee.

■ As for the retroactive ratification theory, it is rather late in this litigation for LI to claim that it is now willing to ratify Rubin's acceptance of the Check as LI's agent, particularly where the ratification is clearly aimed solely at avoiding the adverse judgment here. LI claims that it is willing to ratify Rubin's acceptance of the Check on behalf of LI, but not his use of the forged power of attorney or his forged endorsement of the Check pursuant to that power of attorney. However, if in fact Rubin was purporting to act as LI's agent when he accepted the Check from FTC, it could only have been as agent under the forged power of attorney. While it is at least arguable that LI could, even at this late date, ratify the acceptance, it could only do so by ratifying Rubin's professed position as attorney-in-fact: a principal may not retroactively disavow a purported agency and at the same time create and ratify a distinct, more limited agency which

 

suits the principal's purposes better than the purported agency would.

 In addition, under the *Barclays II* analysis the delivery of the check must occur prior to the alleged forgery and conversion, because possession by the payee after the forgery would almost certainly constitute the payee's ratification of the forged endorsement. Thus in order to maintain an action against Chemical, LI would have had to accept delivery of the Check prior to the forgery. As provided by § 90 of the Restatement 2d of Agency:

> If an act to be effective in creating a right against another ... must be performed before a specific time, an affirmance is not effective against the other unless made before such time.

Therefore, LI would have had to ratify Rubin's authority to accept the Check as LI's agent prior to the time of the forgery. Because any ratification here did not occur until long after this event, it must be found to be ineffective.

Finally, LI's ratification argument overlooks the practical considerations underlying the delivery requirement of *Barclays II*. As the Court of Appeals there explained,

> Where a payee has never possessed the check, it is more likely that the forged indorsement resulted from the drawer's negligence, an issue which could not readily be contested in an action between the payee and the depositary bank.

76 N.Y.2d at 537, 561 N.Y.S.2d at 699, 563 N.E.2d at 13. The payee's retroactive affirmance of a third party's authority to accept the check simply cannot alleviate the difficulty of addressing the drawer's negligence in the context of a suit by the payee against the bank.

CONCLUSION

For the foregoing reasons, LI's arguments that the Check was constructively delivered to LI are rejected. On the basis of the New York Court of Appeals decision in *Barclays II*, therefore, LI cannot maintain an action against Chemical for conversion of the Check. Accordingly, Chemical's motion for judgment is granted.

Submit judgment on notice.

It is so ordered.