Jacob Link and Aaron B. Link, Trading as Link and Company, Appellants, v. First National Bank of Chicago, Appellee.

### Gen. No. 41,851.

Heard in the third division of this court for the first district at the October term, 1941. Opinion filed January 7, 1942.

BERNARD J. BROWN, of Chicago, for appellants.

Bell, Boyd & Marshall, of Chicago, for appellee; Charles E. Herzog, of Chicago, of counsel.

Mr. Presiding Justice Burke delivered the opinion of the court.

On August 4, 1939, plaintiffs filed their statement of claim in the municipal court of Chicago against Morris B. Sachs, alleging that on April 7, 1939, they sold and delivered to him coats of the value of $223.90, on April 26, 1939 coats of the value of $179.50, and on May 10, 1939 woolens of the value of $231.94, a total of $601.34, which he refused to pay. On September 7, 1939, Sachs filed an "Amended Defence," stating that he "did not purchase or receive the goods described in plaintiffs' statement of claim, or any part thereof, from the plaintiffs herein, on the dates set forth in the plaintiffs' statement of claim or at any other time." On October 4, 1939, plaintiffs filed their amended statement of claim, and averred that they were engaged in the business of manufacturing ladies' wearing apparel, including ladies' coats designated as "Roslin" coats; that they were manufacturing "Roslin" coats for the defendant for more than a year previous to the filing of such amended statement of claim, and that they delivered "Roslin" coats and woolens on the dates and of the values set up in the original statement of claim. The trial of the action against Morris B. Sachs was begun on November 14, 1939. At the close of plaintiffs' case the court overruled defendant's motion for a finding in his behalf and continued the case to December 20, 1939. On December 18, 1939, the court gave plaintiffs leave to make the First National Bank of Chicago, J. Rosenberg, Alex N. Dolnick and the Amalgamated Trust & Savings Bank, additional parties defendant. On December 20, 1939, on motion of plaintiff, the defendant Morris B. Sachs was dismissed and judgment for costs was entered in favor of Sachs and against plaintiffs. On September 23,

1940, plaintiffs filed their third amended statement of claim and alleged the selling of "Roslin" coats to Morris B. Sachs for one year prior to June 1, 1939, during which time plaintiffs rendered bills to Sachs under the name of "Roslin Coats," and received checks therefor payable to "Roslin Coats"; that one J. Rosenberg was employed by plaintiffs as a salesman and collector; that on June 6, 1939, Sachs was indebted to plaintiffs for merchandise theretofore sold and delivered to him for the sum of $554.74; that on June 5, 1939, Sachs executed a check for $375.73 payable to the order of "Roslin Coats" and drawn on the First National Bank of Chicago; that on June 6, 1939, Sachs executed a check for $172.01, payable to "Roslin Coats" and drawn on the First National Bank of Chicago; that these checks were in payment of merchandise theretofore sold and delivered to Sachs; that the checks were delivered by Sachs to Rosenberg; that without any authority from plaintiffs, Rosenberg indorsed the checks and secured the money represented thereby, and that the endorsements on the checks were forgeries. The defendant, First National Bank of Chicago, filed its appearance and amended statement of defense, which averred that it had no knowledge as to the sale of the merchandise to Sachs; admitted that the checks were indorsed by J. Rosenberg; denied that such endorsements were forgeries; denied that Rosenberg had no authority to so indorse the checks; averred that each of the checks was payable to bearer and that the endorsements thereon were unnecessary and immaterial; that it paid each of the checks pursuant to the order of the drawer; that plaintiffs ratified and approved the acts of Rosenberg in indorsing and collecting the proceeds of the checks, and that after plaintiffs had full knowledge of the material facts concerning the checks they brought an action against Sachs for the price of the goods for which the checks were given; that in such action plaintiffs took the posi-

tion that the price of the goods so sold to Sachs remained unpaid by Sachs; that in their action plaintiffs take the position that the price was paid by the checks; and defendant insisted that the bringing of the action against Sachs constituted an election of remedies by plaintiff, which constituted a bar to the instant action. The record is silent as to whether service was had on J. Rosenberg, Alex N. Dolnick and the Amalgamated Trust & Savings Bank, and does not show what disposition, if any, was made of the case as to them. A trial by the court without a jury resulted in a finding and judgment against plaintiffs. Plaintiffs ask that the judgment be reversed and that judgment be entered in their favor.

Plaintiffs' theory is that they were the owners of the two checks; that Rosenberg had no express or implied authority to indorse the checks, and that the payment of the proceeds by the bank, on the strength of such endorsements, rendered the bank liable. Defendant's theory is that Rosenberg and Jacob Link were partners, which relationship gave Rosenberg the right to indorse checks; that irrespective of the partnership the name of the payee of the checks did not purport to be the name of any person, so that the checks were payable to bearer, and that in any event the action is barred by the prior action against Sachs. Jacob Link testified that he and his partner, Aaron Link, had been engaged in business in Chicago as co-partners under the name of Link & Company for about 20 years; that they had known Jacob Rosenberg for a number of years; that the first time they had any business dealings with him was in July 1938; that then Rosenberg proposed that the Links should make a cheaper coat which Rosenberg would be able to sell; that the buyer and manager for Morris B. Sachs was his (Rosenberg's) nephew and that he could get a great deal of business from Sachs; that the Links would design the style and the coats would be made

on the outside; that they would be cheaper coats; that he, Rosenberg, would get 50 per cent of the net profits; that they adopted the name "Roslin" coats, a combination of the names Rose and Link. Rose was the name of a sister of the witness. He further testified that Rosenberg frequently collected checks, which he delivered to the witness; that plaintiffs would indorse the checks, "Roslin Coats," "Link & Company," and deposit them in plaintiffs' account in the American National Bank; that in the late spring of 1939 witness did not see Rosenberg for about two weeks; that he then called Rosenberg's wife on the telephone; that Rosenberg came to plaintiffs' place of business about June 15, 1939; that in the ensuing conversation, witness asked Rosenberg whether he had received a check from a customer named Vence; that Rosenberg admitted he had received such a check; that witness asked him for the check so he could deposit it; that Rosenberg told him he needed money and cashed the check; that witness asked him whether he had collected any more checks and he answered, "No"; that in the meantime witness found out that Rosenberg received two checks from Morris B. Sachs; witness asked Rosenberg what he did with the Sachs checks; Rosenberg replied that he cashed them also. Witness testified that plaintiffs did not receive the money represented by the checks from Rosenberg or any one else. He further testified that the endorsements on the checks were not in his handwriting; that he did not see the endorsements until the canceled checks were shown to him by an employee of Sachs following the disclosure by Rosenberg that he had cashed the checks, and that prior to June 5, 1939, Rosenberg did not indorse any. checks issued to "Roslin Coats." In answer to a question whether Rosenberg was a "member of your firm," the witness answered, "No." On cross-examination, witness testified that the checks is-. sued by Sachs were in payment for the goods for which

plaintiffs sued Sachs; that Rosenberg was to furnish the customers and do the selling; that he was also to do cutting and help in the shop; that Rosenberg did not do any buying; that witness consulted him with reference to the cloth to buy; that Rosenberg had authority to pick up checks from customers; that separate books were kept for the business done under the name of "Roslin Coats"; that such books were separate from the books of Link & Company; that Rosenberg was not reported as an employee under the Social Security Act; that the name "Roslin" was applied only to garments sold by Rosenberg; that after the arrangement between plaintiffs and Rosenberg came to an end, the use of the name "Roslin Coats" was discontinued; that Rosenberg purchased furs from the Below Fur Company for "Roslin Coats"; that he purchased garments from Below and Saknefsky for "Roslin Coats"; that witness needed some goods and sent Rosenberg to get them, which were the purchases mentioned. Witness further stated that plaintiffs and Rosenberg agreed to keep separate books and to split the profits. Defendant introduced Joseph Rosenberg, who testified that he had a business connection with Jacob Link in the fall of 1938 and spring of 1939 under the name "Roslin Coats"; that he suggested the name, which came from the names Rosenberg and Link; that in July 1938, Jacob Link and witness had a conversation at plaintiffs' place of business; that the conversation was that as to the business already possessed by plaintiffs, defendant was not to participate; that as to other business the parties would split the profits. Witness further testified that the arrangement was that "We will do all the work; we can save naturally what we can do ourselves, and I said at first, 'I do not need any money because I have got some money as far as to live on, but will wait until the end of the season, see what we make in a lump, you know, see we will make progress because I figured we will do a good

business.' " Witness stated that the parties were to do whatever work they could do; and that he was to cut. In answer to a question as to what else was said in the conversation, witness answered, "Nothing of importance, just that we will be partners in that," and "that whatever we sell, whatever we make, we will divide the profits." In answer to a question by the court about the losses, witness answered, "If there is any losses, naturally I have to stand those." In answer to another question by the court as to whether witness said anything about losses, he answered, "We didn't. The truth is we didn't talk about losses." Witness further stated that he agreed that he would do everything that was necessary; and that he would deliver and ship. He stated that "Roslin Coats" had nothing to do with Link & Company's customers; that he went to other sources and obtained garments to copy; that he copied such garments and went out and secured orders; that he started to cut and sew, also to ship and do whatever was necessary; that he went out and collected money; that he did cutting, shipping, cleaning and delivering; that he purchased "Roslin" goods; that he sold only to his own customers; that as far as he knew the customers who purchased "Roslin Coats" had never done business with Link & Company. On cross-examination he testified that he was to secure 50 per cent of the net profits; and that at the time the arrangement was made he had money of his own. He did not say where he obtained this money. He testified that the checks he collected for the "Roslin Coats" were delivered to Link, who deposited them in the bank; that he did this except as to the two checks involved in the instant case; that outside of these two checks he did not indorse any checks made payable to "Roslin Coats." He further testified that he purchased goods in the name of "Roslin Coats" and sometimes in his own name; that the purchases in his own name were from a firm named Below; that such pur-

chases from Below were billed to ''Roslin Coats''; that Jacob Link paid for the goods so purchased out of the funds of Link & Company; that he collected from Vence four or five times; that Vence paid by check, which Rosenberg would bring to Link, except the last check which he retained, indorsed and cashed; that he cashed the checks through his son-in-law, Alex H. Dolnik; that he indorsed the checks with the name, ''Roslin Coats, by J. Rosenberg, Prop.,'' and that he retained the money received on such checks. About two months after the checks were cashed, he filed a petition in bankruptcy. He paid his lawyer $150 for filing this petition and this was part of the money realized from the two checks. In the schedule filed in the bankruptcy proceedings, he showed Link & Company as a creditor for the amount of the checks.

The first point urged by plaintiffs is that the drawee bank is liable to the payee if it pays a check upon an unauthorized endorsement, that after a check has been delivered to the payee it is the property of the payee, and that the bank which pays the check on a forged endorsement is liable to the payee for the funds wrongfully paid out. Defendant does not argue to the contrary. The second point advanced by plaintiffs is that Rosenberg had no express or implied authority to indorse the checks payable to the order of ''Roslin Coats.'' Defendant declares that the existence of a partnership may be implied from circumstances, and that in this case the circumstances show that a partnership did exist between Jacob Link and Rosenberg. Defendant asserts that as a member of the partnership, Rosenberg had authority to indorse checks payable to the partnership and to receive the proceeds thereof. In *Ryhiner v. Feickert*, 92 Ill. 305, the court said (311): ''That a partner may, in general, indorse and transfer a promissory note made payable to his firm, is not questioned.'' The testimony shows that Rosenberg was to receive 50 per cent of the profits; that he furnished

the customers for "Roslin Coats"; that he did some of the cutting of the goods; that he bought some of the cloth and furs for the coats; that Rosenberg and Link agreed on the price of the coats; that Link & Company did not use the name "Roslin Coats" after the arrangement between Link and Rosenberg ceased; that Rosenberg was not reported as an employee under the Social Security Act; and that separate books were kept for the business done in the name of "Roslin Coats." There is also evidence tending to show that the name "Roslin Coats" was composed of "Ros" from Rosenberg and "Lin" from Link. Jacob Link testified that Rosenberg was not a partner. The latter testified that he was a partner, and that "if there is any loss naturally I have to stand this." He also testified that "the truth is that we did not talk about losses." The trial judge saw and heard the witnesses and was in a superior position to determine the weight to be given their testimony. Our view is that there was sufficient evidence to warrant the court in finding that Rosenberg was a partner. As a partner, the law gave him the right to indorse the checks.

Defendant insists that plaintiffs made a final, irrevocable election of remedies when they sued Sachs for the price of the goods, and that such election is a bar to this action. Defendants point out that the action against Sachs was predicated upon the theory that he had not paid the price of the goods, and that by such action plaintiffs repudiated the acts of Rosenberg in accepting and cashing the checks. In the action against the bank, plaintiffs' theory is that the price has been paid by Sachs and that the bank converted the proceeds of the checks. It is obvious that thereby plaintiffs ratified some of Rosenberg's acts. In the former action they chose to treat the checks as not being their property, whereas in the present action they necessarily assert the checks were their property. Plaintiffs rely on the case of *Golinkin v. First Union Trust*

*& Savings Bank,* 276 Ill. App. 40, and *Kaszab v. Metro-politan State Bank,* 264 Ill. App. 358, to support their contentions. As we have decided that there was sufficient evidence to support the defense that Rosenberg was a partner, it is unnecessary to consider the point that in suing and proceeding to trial against Sachs, plaintiffs made a final irrevocable election of remedies barring them from maintaining the present action. We will not lengthen this opinion by considering another point urged by defendant, namely that the checks were payable to bearer because the name of the payee did not purport to be the name of any person thereby making it unnecessary to indorse payee's name on the checks.

Because of the views expressed, the judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

HEBEL and KILEY, JJ., concur.