OPINION OF THE COURT
Leonard A. Weiss, J.
A customer presents his bank with a check for deposit which is paid by it and the drawer’s bank without the in *530 dorsement of the copayee. Seven months after final settlement, the customer’s account is charged back by his bank following assertion of a claim to the proceeds of the check by the copayee. In an action by the copayee against the party who presented the check for deposit, the presenting party’s bank, and the drawer’s bank, who, if anyone, is entitled to summary judgment? In the cross claims between the appearing defendants, who, if anyone, is entitled to summary judgment?
Defendants Curley doing business as North End Wine and Liquor (herein Curley or North End) move under CPLR 3211 (subd [a]) for summary judgment dismissing the complaint of plaintiff, Capital District Telephone Employees Federal Credit Union (herein Credit Union) against them on the grounds it fails to state a valid cause of action.
Plaintiff Credit Union cross-moves for summary judgment on its complaint against defendants North End, National Commercial Bank (herein NCB), and Union National Bank (herein UNB).
Defendant NCB cross-moves for summary judgment: (1) dismissing the Credit Union’s summons and complaint against it or, in the alternative, (2) granting summary judgment in favor of NCB on its cross claim against defendant North End.
CPLR 3211 (subd [c]) and 3212 (subd [b]) require this court to examine the parties’ submissions to determine the existence of triable factual issues on these motions to dismiss and for summary judgment. The undisputed facts in the parties’ submissions are as follows:
(1) On July 22, 1977 defendant Berthiaume secured a loan from the Credit Union of $4,226.47 to purchase a 1977 Chevrolet from W.H. Bumstead, Inc. and received Credit Union’s check No. 101797, dated July 27,1977 in the amount of $4,226.47 drawn on Credit Union’s account in the Bank of New York, payable to him and W.H. Bumstead, Inc.
(2) On July 25, 1977 the Credit Union check was presented by Bumstead to UNB for deposit and was paid.
(3) On July 25, 1977 Berthiaume decided not to purchase the 1977 Chevrolet and requested a refund from W.H. *531 Bumstead, Inc. Accompanied by his employer, Eleanor Curley, Berthiaume went to Bumstead where he was given check No. 49278, dated July 25, 1977, drawn on Bumstead’s account with UNB in the amount of $4,226.47 and made payable to him and the Credit Union (herein Bumstead check).
(4) On July 25,1977 Berthiaume indorsed the Bumstead check and gave it to his employer North End, in satisfaction of a personal loan he made from North End. Without indorsing the Bumstead check, Mrs. Curley deposited it to the North End account with NCB.
(5) NCB accepted Bumstead’s check for deposit to North End’s account without the Credit Union’s indorsement and permitted North End to draw against the funds.
(6) UNB paid the Bumstead check without the Credit Union indorsement when it was presented for collection by NCB in the normal course of the check collection process.
(7) The Credit Union informs defendants that it did not receive the proceeds of the Bumstead check and demands principal and interest from July 27,1977 in three letters, to wit: one to NCB dated January 17,1978, one to North End dated February 9,1978, and one to UNB dated February 9, 1978.
(8) After learning the Credit Union’s position on February 6, 1978 on February 8, 1978, approximately seven months after the check was presented and paid, NCB removed $4,226.47 from North End’s checking account and placed that sum in an interest bearing account in escrow.
The underlying action began when the Credit Union served all defendants except Berthiaume, who could not be located, with a summons dated March 14, 1978. The complaint, containing 14 paragraphs, purports to state a cause of action against (1) Berthiaume and North End for negotiating the Bumstead check and depositing it without obtaining theJDredit Union indorsement or consent; (2) NCB for accepting and paying the Bumstead check without the Credit Union indorsement or consent; and (3) UNB for paying the Bumstead check from funds deposited in Bum-stead’s account with UNB without the Credit Union indorsement or consent. Plaintiff seeks a judgment against *532 each defendant in the amount of $4,226.47 plus interest from July 25,1977.
'‘NCB’s answer dated October 26, 1978 asserts a cross claim against Berthiaume and North End on the theory that their act of transferring the Bumstead check to NCB and obtaining payment was legally sufficient under sections 3-417 and 4-207 of the Uniform Commercial Code, to create a warranty by them to NCB that they had good title to the check and were authorized to obtain payment for that reason. NCB urges that the breach of the warranty of title by Berthiaume and North End makes them liable to NCB, if NCB is held liable to any person or entity because it paid the Bumstead check.
UNB’s answer dated October 19, 1978 alleges a cross claim against NCB on the legal theory that NCB, a collecting bank, by placing the Bumstead check in the collection system, warranted to UNB, a payor bank, that NCB either had good title or was authorized to obtain payment on behalf of one who had good title. UNB asserts that if it is held liable to any person or entity because it paid the Bumstead check, NCB will be liable to UNB for the full amount of the judgment because of NCB’s breach of warranty. UNB also cross-claims against Berthiaume and North End for breach of their warranty of title in the event UNB is held liable to a third party for paying the Bumstead check.
North End interposes two answers each sworn to December 28,1978. One answer responds to the cross claim of NCB with two affirmative defenses, to wit: (1) that NCB’s Waterford Branch personnel did not require any indorsement other than Berthiaume’s when the Bumstead check was deposited to North End’s account even though the North End owner who made the deposit allegedly informed personnel at the Waterford Branch that Berthiaume’s was the only signature on the check and (2) that even if North End is found to have breached its warranties to NCB, said breach cannot be the basis for a successful cross claim against North End by NCB who waived any rights it might have “by virtue of its unreasonable delay in failing to give notice of dishonor and protest under U.C.C. § 3-502.” North End’s second answer to the cross claim of UNB purports to allege one affix- *533 motive defense which is also based on North End’s failure to indorse the Bumstead check, and UNB’s combined failure with that of NCB to give timely notice of protest and dishonor as is allegedly required by section 3-502 of the Uniform Commercial Code.
1. NORTH END’S MOTION TO DISMISS THE CREDIT UNION’S COMPLAINT AND THE CREDIT UNION’S CROSS MOTION FOR SUMMARY JUDGMENT AGAINST NORTH END
The legal relationship between the Credit Union, a named payee on the Bumstead check, and North End who acquired proceeds from the check by presenting it for deposit to NCB (the “Depositary bank” under section 4-105 of the Uniform Commercial Code) with a missing indorsement is governed by the Uniform Commercial Code and case law.
The Bumstead check falls within the definition of negotiable instrument set forth in section 3-104 of the Uniform Commercial Code because it is signed by a drawer, and contains an unconditional promise to pay a sum certain in money to named bearers on demand. Section 3-419 (subd [1] , par [c]) of the Uniform Commercial Code says that an instrument is converted when it is paid on a forged indorsement. Subdivision (43) of section 1-201 of the Uniform Commercial Code defines an “Unauthorized * * * indorsement [as] one made without actual, implied or apparent authority and includes a forgery.” In this case, North End received the proceeds of an instrument payable to two payees without the consent, actual or implied, of one. Subdivision (b) of section 3-116 of the Uniform Commercial Code clearly says that if payees are not designated as alternative on the face of the instrument, then payment can only be made to all of them.
North End’s failure to actually indorse the check does not insulate it from liability in conversion to an actual payee of the check. The mere act of transferring an instrument and receiving payment for it creates certain warranties by the person receiving the consideration under subdivision (2) of section 3-417 of the Uniform Commercial Code. North End’s failure to notify the Credit Union *534 that it was depositing a check made payable to the Credit Union to its own account was improper.
North End’s unauthorized negotiation of the Bumstead check unquestionably amounted to conversion under section 3-419 (subd [1], par [c]) of the Uniform Commercial Code because an unauthorized negotiation of a check is equivalent to an unauthorized indorsement under subdivision (43) of section 1-201 of the Uniform Commercial Code.
In similar situations payees whose indorsements were not obtained have recovered against a party who improperly obtained the proceeds of instruments improperly paid by a depositary bank (see, e.g., Hillsley v State Bank of Albany, 24 AD2d 28, 31 [offered with approval as authority for a different principle in Hechter v New York Life Ins. Co., 46 NY2d 34, 37]).
Legally there is no basis to dismiss the Credit Union’s complaint against North End but there is a basis in conversion for granting the Credit Union’s cross motion for summary judgment against North End.
Accordingly, the Credit Union is granted summary judgment under CPLR 3.212 against North End in the amount of $4,226.47 plus interest from July 25, 1977, and North End’s motion to dismiss the Credit Union complaint against it is denied.
2. NOB’S RIGHTS AND OBLIGATIONS
NCB was both a “Depository bank” under subdivision (a) of section 4-105 of the Uniform Commercial Code and, a “Collecting bank” under subdivision (d) of section 4-105 of the Uniform Commercial Code. In these legal roles NCB had the following legal obligations and rights:
(1) To the Credit Union as a named payee on the Bum-stead check NCB had the legal obligation of refusing to pay the check unless it was properly indorsed (Uniform Commercial Code, § 3-419, subd [1], par [c]; Hechter v New York Life Ins. Co., 46 NY2d 34, 37, supra; Myers v First Nat. Bank of Scotia, 42 AD2d 657, 658; Hillsley v State Bank of Albany, 24 AD2d 28, 31, supra; Edwards Co. v Long Is. Trust Co., 75 Misc 2d 739, 741).
*535 (2) NCB, by operation of law, made all the warranties contained in section 4-207 of the Uniform Commercial Code to UNB when it obtained payment on the Bumstead check from UNB.
(3) NCB was obligated to its customer, North End, to follow the time limits provided for a “charge back” set forth in section 4-212 of the Uniform Commercial Code. NCB’s February, 1978 charge back was improper because it was done after final settlement on the Bumstead check was received from UNB in accordance with subdivision (3) of section 4-211 and section 4-213 of the Uniform Commercial Code.
(4) NCB has the right to pursue North End for payment of the Bumstead check under section 4-207 of the Uniform Commercial Code because North End assumed a warranty of good title to NCB when it presented NCB with the Bumstead check for deposit.
This court makes the following determinations based upon its review of the applicable legal principles: (1) NCB’s cross motion for summary judgment dismissing the Credit Union’s complaint is denied; (2) the Credit Union, which never received any proceeds from the Bumstead check, is entitled to CPLR 3212 summary judgment against NCB in the amount of $4,226.47 plus interest from July 25, 1977, making NCB jointly and severally liable to the Credit Union with North End; (3) North End is entitled to summary judgment against' NCB directing NCB to credit North End’s account with the proceeds of the separate account NCB created in February, 1978 when it improperly charged back North End’s account after NCB received final payment for the Bumstead check from UNB, the payor bank; (4) North End is not entitled to summary judgment on its cross claim seeking to recover damages from NCB based on NCB’s alleged improper dishonor of North End checks for insufficient funds after the improper charge back in February 1978. NCB’s denial that any North End checks were returned for insufficient funds after the charge back in February, 1978 is sufficient to create a triable issue of fact; (5) NCB is entitled to summary judgment against North End in the sum of $4,226.47 *536 plus interest from July 25, 1977 because North End breached the warranties of title and of no knowledge of unauthorized signature set forth in section 4-207 (subd [1] , pars [a], [b]) of the Uniform Commercial Code which arose when North End obtained payment on the Bumstead check from NCB; (6) UNB is entitled to summary judgment against NCB in the sum of $4,226.47 plus interest from the date NCB accepted payment on the check from UNB. UNB, as a payor bank under subdivision (b) of section 4-105 of the Uniform Commercial Code, can recover against NCB on the breach of warranty which arose under section 4-207 (subd [1], par [a]) of the Uniform Commercial Code when NCB obtained payment from UNB for the Bumstead check to which NCB did not have title because of the missing indorsement. UNB is liable to the Credit Union for conversion under section 3-419 (subd [1], par [c]) of the Uniform Commercial Code because it paid the Bumstead check over a missing indorsement and neither the check nor the proceeds reached plaintiff. Under the Appellate Division, Third Department, holding in Myers v First Nat. Bank of Scotia (42 AD2d 657, 658, supra) the collecting bank (NCB) is liable to the payor bank (UNB) when the collecting bank presents a check to the payor, is paid on the check, and subsequently learns that its Uniform Commercial Code (§ 4-207, subd [1], par [a]) warranty of title to the payor was breached because the check was not properly indorsed.
3. unb’s rights and obligations
As the “payor bank” under subdivision (b) of section 4-105 of the Uniform Commercial Code UNB had the following legal obligations and rights:
(1) To the Credit Union as a named payee on the Bum-stead check UNB had the obligation to not pay the check unless properly indorsed by the Credit Union (Uniform Commercial Code, § 3-419, subd [1], par [c]; Myers v First Nat. Bank of Scotia, 42 AD2d 657, 658, supra).
(2) Under section 4-207 (subd [1], par [a]) of the Uniform Commercial Code UNB has a right to seek a judgment from NCB which breached the warranty of good title *537 imposed upon NCB when it received payment from UNB for the Bumstead check (Myers v First Nat. Bank of Scotia, supra).
Based on the foregoing legal principles this court holds the Credit Union is entitled to summary judgment against UNB in the sum of $4,226.47 plus interest from July 26, 1977 because UNB’s paying the Bumstead check which was not properly indorsed was a conversion of Credit Union property under section 3-419 (subd [1], par [c]) of the Uniform Commercial Code. UNB, NCB, and North End are jointly and severally liable to the Credit Union for the $4,226.47 judgment plus interest from July 25, 1977. UNB is granted summary judgment against NCB for breach of warranty of title which occurred when NCB presented to and received payment from UNB for the Bumstead check which NCB did not have good title to because of the missing indorsement.
4. SUMMARY
In the underlying action, a named payee on a negotiable instrument seeks to recover a money judgment in the face amount of the instrument plus interest from the party who obtained the proceeds of the instrument by depositing it to an account with his bank, from the collecting bank, and from the payor bank. The Credit Union is granted summary judgment against North End, NCB, and UNB in the sum of $4,226.47 plus interest from July 25, 1977 because the instrument was negotiated without the Credit Union’s indorsement or consent and each defendant is liable to the Credit Union for conversion under section 3-419 (subd [1], par [c]) of the Uniform Commercial Code. The cross claims of the appearing defendants are all dismissed except: (1) NCB is granted summary judgment against North End for North End’s breach of warranty of title which resulted in North End’s receiving the proceeds of the Bumstead check instead of the Credit Union; (2) UNB is granted summary judgment against NCB for any amount which UNB may pay the Credit Union on the judgment because of NCB’s breach of warranty of title; (3) North End is granted summary judgment against NCB directing NCB *538 to place in North End’s checking account the total sum of money NCB untimely and improperly charged back to North End’s account. North End’s action against NCB for impairment of financial reputation, because of the allegedly improper charge back, is to proceed to trial to resolve disputed factual issues. All relief granted herein is without prejudice to any defendant’s right to bring such action against Berthiaume as they deem appropriate when Berthiaume is located. To avoid unnecessary transfer of funds in satisfaction of this judgment, the defendants may, if so advised, arrange to have North End directly pay the Credit Union because North End is the only defendant who has access to the converted funds.